# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

CURTIS SHERROD II, individually
CURTIS SHERROD SR individually
TIFFANY PETER individually and on behalf of
Minor children J. Z. S., A. J. S. AND
J. M. S..

JURY TRIAL REQUESTED

FILED BY _____ D.C.

FEB 1 1 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

Plaintiffs,

V.

BRIAR BAY HOA Individually and Severally, ALLIED INSURANCE, KINGS MANAGEMENT, WEST PALM BEACH POLICE DEPARTMENT, ANTHONY O'DEA; Individually, CITY OF WEST PALM BEACH, JOSEPH PETRICK, individually; BRUCE KING ESTATE, KAYE BENDER REMBAUM Attorneys at Law, WESLEY FINCH, individually; Unknown SECURITY COMPANY (to be named after discovery), WILLIAM VIEGA, individually

Defendants,
_____/

## COMPLAINT

Plaintiffs, CURTIS L. SHERROD II, TIFFANY PETER, CURTIS SHERROD SR. and Minor Child J.Z.S. in Proper Person, hereby complain against the DEFENDANTS, BRIAR BAY HOA, ALLIED INSURANCE, Un-named INSURANCE COMPANY(to be named after discovery), KINGS MANAGEMENT, THE ESTATE of BRUCE KING, CITY of WEST PALM BEACH, JOSEPH PETRICK, WEST PALM BEACH POLICE DEPARTMENT, Det. ANTHONY O'DEA, KAYE BENDER REMBAUM Attorneys at Law, WESLEY FINCH, Un-named SECURITY COMPANY(to be named after discovery), SECURITY SUPERVISOR WILLIAM VIEGA claims for relief as follows:

## I. JURISDICTION AND VENUE

1. This is, in part, an action authorized and instituted pursuant to: 18 U.S.C. § 249 Hate Crime, 28 US Code §42 4101 Defamation, U.S.C. §1983, 42 U.S.C.§1988, 42 U.S.C.§3601-3619 the Fair Housing Act, 42 U.S.C. §1981 Housing and Discrimination, 42 U.S.C. §1986 Neglect of Duty, 42 U.S.C. § 1985 Conspiracy/Deprivation of Civil Rights, and the Fifth, Fourth and 14th Amendments of the United States Constitution

2. The jurisdiction of this Court is predicated upon 28 U.S.C. §1331 and §1343, to redress the unlawful deprivation of Plaintiff's rights secured, guaranteed, and protected by federal law.

3. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §1391(b), wherein Plaintiff resides, Defendants regularly conducts business and where all the wrongful conduct occurred.

4. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 18 U.S.C. § 1962, (d) wherein Plaintiff resides, Defendants regularly conduct business and where all the wrongful conduct occurred.

5. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 42 U.S.C. § 1983, (d) wherein Plaintiff resides, Defendants regularly conducts business and where all the wrongful conduct occurred.

## II. Parties

6. PLAINTIFFS

CURTIS SHERROD II - 3117 Bollard Road, Royal Palm Beach, Florida 33411

TIFFANY PETER-3117 Bollard Road, Royal Palm Beach, Florida 33411

Minor child J. Z. S.,

Minor Children A. S. AND J. M. S.

CURTIS SHERROD SR. 2016 SW PRUITT ST. PORT ST. LUCIE, FLORIDA 34953

7. DEFENDANTS

BRIAR BAY ASSOCIATION 3400 CELEBRATION BLVD ROYAL PALM BEACH, FLORIDA 33411.

ALLIED INSURANCE P.O. BOX 211651 EAGAN, MINNESOTA 55121

KINGS MANAGEMENT 1224 US-1 NORTH PALM BEACH, FLORIDA 33408

BRUCE KING ESTATE 1224 US-1 NORTH PALM BEACH, FLORIDA 33408

WEST PALM BEACH POLICE DEPARTMENT 600 BANYAN BLVD WEST PALM BEACH, FL 33401

CITY OF WEST PALM BEACH 401 CLEMATIS ST #2 WEST PALM BEACH, FL 33401

DETECTIVE ANTHONY O'DEA 600 BANYAN BLVD WEST PALM BEACH, FL 33401

JOSEPH PETRICK 401 CLEMATIS ST #2 WEST PALM BEACH, FLORIDA 33401

KAYE BENDER REMBAUM ATTORNEYS at LAW 9121 N MILITARY TRL STE 200, PALM BEACH GARDENS, FL 33410

WESLEY FINCH **6688 SE SILVERBELL AVE, STUART, FL 34997-2247** .

UNNAMED SECURITY AGENCY

WILLIAM VIEGA 3400 CELEBRATION BLVD ROYAL PALM BEACH, FLORIDA

33411.

### III. STATEMENT OF CLAIMS

8. FINCH, PETRICK, VIEGA, KING, KINGS MANGEMENT, BRIAR BAY HOA, and KAYE BENDER REMBAUM ATTORNEY'S AT LAW in or about June of 2021 began an organized scheme to defraud PETER, and the Minor Child J.Z.S she shares with SHERROD of the Residence at 3117 Bollard Road Royal Palm Beach FL. At which time, having fallen behind on their HOA fees due to the pandemic, PETER was negotiating for repayment, in what she thought was good faith, having successfully done so in the immediate past, with the Tides a subdivision of BRIAR BAY. However, the DEFENDANTS conspired to take the home at 3117 Bollard Road, West Palm Beach occupied by the PLAINTIFFS.

9. The DEFENDANTS began foreclosure proceedings putting the home up for auction, and scheduled it for sale on July 13, 2021, all **without** notifying the PLAINTIFFS. In fact, they were completely unaware of the foregoing until investors started calling PETER, inquiring about her asking price.

10. This hostile action prompted PETER to file bankruptcy in the first week of July 2021 thus protecting her assets and stopping the sale of her home scheduled for July 13th, 2021. In August of 2021, the random illegal denial of ingress for the SHERROD began.

11. In October of 2021 the Bankruptcy case brought forth by PETER was dismissed and the home was re-scheduled for sale on February 7th, 2022. Again, the DEFENDANTS failed to notify the PLAINTIFFS.

10. On Thursday February 3rd, 2022, SHERROD unlawfully refused ingress into the

4

community, with all 3 of his tender-aged children in the vehicle at night in frigid temperatures. (SEE FSA 720.305 (2)(a)) The West Palm Beach Police Department were called when SHERROD removed the gate by hand, upon their arrival they were informed that SHERROD had been a resident at that time, more than two years and therefore Security at the Gate had no right to deny him ingress.

11. It is imperative that this Honorable Court take note that no charges were filed after that incident, specifically because the PLAINTIFF had not broken any laws. The PLAINTIFF humbly asks this Court, that if criminal mischief did not apply on February 3rd, 2022, then how could it apply on May 18, 2022, since this was supposedly FINCH'S reason for accosting SHERROD at his residence?

12. On Friday February 4th, 2022, a second Bankruptcy case was filed on behalf of PETER . However, the docket was not updated until Monday February 7th, 2022, so the home was auctioned and sold. The Judge halted all proceedings and nullified the sale on the same day February 7th, 2022, thus yet again vacating the sale of the home.

13. It appears that the above angered and frustrated FINCH because, not only did the stops at the gatehouse become more frequent, but it was in late February or March that he assaulted Joan Thompson, **another** Black resident who had come to the clubhouse to complain about her son being randomly being denied ingress. Furthermore when Ms. Thompson fled FINCH pursued her and ran her over with the DEFENDANT'S golf cart injuring her so severely that Kings Management compensated Thompson for her injuries and time missed from work. However, the PLAINTIFFS did not become aware of this incident until the residents' meeting of June 13, 2022.

14. On or about May 1, 2022, the PLAINTIFFS got a phone call from the bankruptcy Court

informing them that PETER would be able to retain her home. On May 18, 2022, SHERROD went to the grocery store. Upon returning home he was again illegally denied ingress to the community despite showing proper identification. SHERROD then removed the gate by hand and went home. Since he was on his way to pick up the tender aged minor JZS from his parents' home in Port St. Lucie and mindful that he had just had trouble at the visitor's gate, he opted to drive PETER'S BMW whose transponder still worked, instead of the more fuel efficient KIA Sorento, rather than take a chance on having trouble with the youngster in the car upon his return. Moments later while he was preparing to leave for Port St. Lucie, as he changed his properly secured shotgun to the BMW, an at the time, unidentified white male driving a gray unmarked pick-up truck came to a screeching halt in front of the residence. The unidentified white male not in uniform or wearing a name tag asked: "Do you have a problem showing your ID at the gate?" SHERROD replied: "I did show my ID; you have 3 different angles of it!" Sherrod suggests that the Court take judicial notice that no such video supporting FINCH's claim ever surfaced. Further that SHERROD was never charged with trespassing even though DEFENDANTS produced hours of surveillance at the gate of **other** visitors pulling up and producing their ID. However, **not one** second of SHERROD refusing to produce his ID was ever produced by the Defendants. Furthermore, when SHERROD pulled his phone out to record him; FINCH yelled: **"I can't wait to get you trash niggers out of here"** and then sped off

    15.    Sherrod respectfully points out that while O'DEA claimed that FINCH's comments were unintelligible, the RING video documented in O'DEA"S PCA disappeared. Not only would that video have proved that it was FINCH rather than SHERROD who was the aggressor, but it would have destroyed his narrative that SHERROD was the out-of-control Black male. Because notably, Sherrod made **no attempt** to chase the man who, he has

6

consistently claimed; called him and his family "Trash Niggers". Instead, despite being quite naturally perturbed by FINCH's vicious verbal assault, he went about his business changing his son's car seat from the KIA to the BMW. As SHERROD was exiting the community he saw the **same** (at the time) unidentified white male walking from the guard shack to the clubhouse. SHERROD rolled down the window and asked the unidentified male: "OMG you work here? What is your name?" After he got no response, SHERROD then made a U-turn and re-entered the community. He then entered the clubhouse by piggy backing another resident; to identify the unknown white male so he could make a formal complaint. After walking around the entire clubhouse, he then exits the building, specifically because it occurred to him that since he was on his way to pick up the minor JZS from his parents' home that he did not have the Key Fob which grants him access to the building. SHERROD points out as a Big Black Male he did not want anyone to be able to claim that he did not have a lawful right to be there. So, he went home to retrieve his Key Fob and then returned to the clubhouse.

16.     This time SHERROD was recording with his phone, however, to his surprise his key fob was deactivated, in a clear violation of FSA. 720.305(b) which requires "a 14-day notice, a hearing, and a written notice of any such suspension by mail or hand before his Key Fob was deactivated. SHERROD then entered the common area from the rear, while continuing to record the entire incident. At SHERROD'S Stand Your Ground hearing and at trial FINCH testified that he asked Mendoza his assistant to lock the door because he "didn't feel safe". However, he shows no sign of fear. He doesn't go in his office or dial 911. Instead he stands casually in the doorway of his office and continued to talk with another resident. In fact FINCH immediately escalated the confrontation, at one point stepping toward Sherrod and telling him to leave while SHERROD continued to ask him his name because he was going to bury him in Civil Court.

SHERROD respectfully requests that this Court take judicial notice that the only audio of this confrontation was recorded on his phone, which was despite numerous requests, withheld from him by O'DEA in the West Palm Beach Police Department's Evidence Storage until a **month after his trial**. Additionally, when it was eventually recovered, his red phone cover had **somehow** turned black, and the SIM card was removed. This apparently happened before the Forensic technician arrived and prevented the phone from uploading the video to the cloud. Thereby ensuring that SHERROD was denied access to critical exculpatory evidence, until after he was incarcerated.

17. At some point during the confrontation FINCH, who had managed to navigate the conflict back his office doorway, tried to slam the heavy wooden office door on SHERROD'S sandaled foot. This is the exact same maneuver that Abrams described in the May 13, 2023 meeting. By reflex SHERROD says he blocked the door with his hand and forearm. O'DEA'S affidavit claims instead that SHERROD punched the door nevertheless, a still photo of the episode clearly shows SHERROD'S fingers thus verifying SHERROD'S description of his actions as purely defensive in nature. However, FINCH had slammed the door so hard that the door bounced back, striking him in the face. At which point he maced SHERROD who, stunned at how fast this encounter had escalated yelled: "you're macing me"? At which point FINCH manipulated the mace so that he could spray beneath SHERROD'S glasses yet again. At that point, SHERROD defended himself. As the two men continued to struggle FINCH pulled a 45. caliber pistol, placed it over SHERROD'S heart and pulled the trigger. SHERROD, seeing the gun at the last instant, was able to grab the barrel and divert the bullets pathway. So, the bullet meant to kill him wound up missing his heart by centimeters, instead piercing his right lung, lacerating his liver and lodging in the loose skin left. SHERROD staggered away from FINCH

and assumed a defensive position in the rear of his vehicle, believing he was fatally wounded he screamed into his IPAD: "I have a right to be here!" (SEE FSA 776.012)

18.   In the immediate aftermath of the shooting FINCH made a phone call. Whomever he spoke to , must have asked who he shot because according to the surveillance tape he answered: "I think his name was Curtis. SHERROD again respectfully asks that this Court take judicial notice of this exchange because at his SYG Hearing, while under oath FINCH claims that he didn't know Sherrod prior to the incident in question.

19.   Furthermore, FINCH believing that he had killed SHERROD and knowing that SHERROD had recorded him escalating the shooting, picked up the phone which SHERROD had dropped during the fray, attempted to avoid the surveillance camera by positioning himself where, he thought that he could safely delete the incriminating video from SHERROD's phone. However, a still photo from the surveillance camera clearly shows him attempting to hide in the surveillance blind spot, with Sherrod's red Samsung phone. In fact, he desperately continued trying to delete the video even after a uniformed West Palm Beach Police Officer entered the room and ordered him to change position. It appears that he continued to pretend the phone was his, until SHERROD received an alert at which point the officer almost certainly realized that it wasn't his phone, because SHERROD's wallpaper is a picture of his three minor children. At which point the officer took the phone from FINCH and placed it on a table.

20.   SHERROD, now admitted into St. Mary's Hospital heavily medicated, received a phone call from O'DEA requesting the passcode for SHERROD's SAMSUNG smartphone since, he knew SHERROD had a personal recording of the incident. SHERROD informed his fiancé TIFFANY PETER of what Det. O'DEA was requesting. PETER instructed SHERROD to not give him access to the SAMSUNG smartphone because O'DEA had not presented himself as a

Law Enforcement Officer that could be trusted and in fact had threatened to charge her with Obstruction of Justice to acquire the iPad from her. Once SHERROD informed Det. O'DEA that he would not grant him access to the Samsung smartphone, all SHERROD's attempts at communicating with O'DEA failed. PETER then made an appointment to retrieve her Blue BMW X5 from Police custody as it was taken after the incident as evidence. When PETER arrived to pick up her vehicle, O'DEA attempted again to gain access to the Samsung smartphone by asking PETER for the pass code for the devices. O'DEA again threatened PETER by saying "If you do not give me the code, I will hold on to the phone and APPLE iPad for months". This was a threat that he made good on because despite multiple requests from SHERROD, he held the phone and iPad until SHERROD had served a month of his sentence.

21.     Significantly, even though the incident in question took place on May 18, 2022, and O'DEA'S investigation was concluded on May 25, 2022, the Probable Cause Affidavit <u>was not filed until July 22, 2022.</u> SHERROD respectfully requests that this Court take Judicial notice that the key fob is controlled by an electronic system that keeps track of when it is used to access the clubhouse. Each key fob has a serial number which identifies each member of the association. The key fob data has a 60-day recording period at which point, the data begins to write over itself destroying any electronic evidence that would confirm SHERROD's claim that he in fact had a key fob and therefore contradict O'DEA's fraudulent Probable Cause Affidavit. Moreover, the key fob which a still photo from a surveillance camera clearly shows in SHERROD'S hand somehow disappeared from the crime scene and was **never** entered into evidence. Furthermore, O'DEA didn't file the Probable Cause Affidavit until just over 60 days (about 2 months) after the Club House battle between FINCH and SHERROD.

21. SHERROD asks that this court take Judicial Notice that the confrontation at Plaintiffs SHERROD and PETER's home at 3117 Bollard Rd was recorded on a Ring Video according to O'DEA's PCA. Information gathered from www.ring.com the manufacturer of the Ring Video camera says it also has a 60-day window before the digital data begins to destroy evidence. Furthermore, SHERROD points out that he can prove that he had a key fob on 5/18/22 with his phone video, along with a still photo from the Club House surveillance video. Subsequently, the key fob and the Ring video described in O'DEA'S fraudulent PCA, **both** disappeared. Please note that this is the same key fob whose absence O'Dea used to justify Finch's right to stand his ground. This rationale led to SHERROD being charged and eventually convicted of Misdemeanor Battery, rather than charging Finch with Aggravated Assault with a Deadly Weapon, as indicated by the labels on the evidence envelopes for the smartphone, iPad, and smartwatch when they were finally retrieved. [OBJ]

22. Further, on the day of the shooting ODEA elicited and recorded, a sworn statement from Jennifer Mendoza who worked as a receptionist at the Clubhouse and had just returned from lunch at the time of the shooting. She stated that residents had been constantly coming to the Clubhouse angrily complaining, and that even though she didn't see the shooting, that she knew that it was FINCH who fired because, to her knowledge he usually kept the weapon in his truck. However, that day she saw that he had it on his waist. ODEA reacted to her potentially exculpatory (for SHERROD) statements by either ignoring them, changing the subject and otherwise failing to follow up the relevant line of questioning.

23. On May 21, 2022, upon being released from the hospital after being treated for the gunshot wound in SHERROD'S chest the PLAINTIFF'S arrived at the Community Gatehouse. PETER was driving. She pulled up and produced her identification and was told to proceed and

11

the gate was raised however as they approached the gate, Security supervisor WILLIAM VIEGA lowered the gate so that the PLAINTIFFS yet again were illegally denied ingress. They waited for the gate to rise again to no avail. Whereupon SHERROD again pushed it aside, which resulted in him being charged with and convicted of misdemeanor mischief. Furthermore, the effort he was forced to exert subsequently resulted in him being readmitted to the hospital because of internal bleeding in his lung, where he contracted COVID. The PLAINTIFFS suggest that this Court take judicial notice that the foregoing incident highlights the essential role that VIEGA plays in the DEFENDANTS' conspiracy. Without him there is no illegal denial of ingress, no pretext for FINCH to come to the PLAINTIFFS' residence nor is there a confrontation and shooting at the clubhouse.

24. Extraordinarily in view of the fact that O'DEA didn't charge SHERROD until July 22, 2022, six weeks later, prior to the residents' meeting on June 13th, 2022 an email came from KING'S MANAGEMENT claiming that there had been an attack on the Property Manager and that the Property Manager had been: "deemed to be acting in self-defense". As noted above there was a resident's meeting held on the same date at the Clubhouse conducted by at that time HOA Vice President, former West Palm Beach Police Officer and current City of West Palm Beach Code Enforcement Officer JOSEPH PETRICK. Due to the overwhelming attendance the meeting was held outside. So, SHERROD and his father SHERROD Sr. were able to observe the proceedings. A Black male resident, Timothy Abrams (willing to testify) began the meeting with **"Wesley Finch treated me like a slave"**. Further, he described how FINCH deactivated his vehicle's transponder which grants him access through the resident's gate, illegally denying him ingress into the community. Abrams recounted that during one of his encounters he asked the Security Officers to contact FINCH who was on a speaker phone and who responded that;

**"Abrams needs to spend the night at a hotel".** Abrams also recounted that the situation between he and FINCH had grown so toxic that on the day of the shooting, his wife thought that he was the resident who had been shot, when she was unable to contact him. Abram's complaint was followed by several other minority residents who lamented that they too had been periodically denied ingress and demanded that FINCH be fired. To which PELTRICK replied that FINCH was too valuable an employee to be fired. At that, several of the residents became so incensed at the prospect of FINCH being able to remain on the premises after discharging a firearm in an area frequented by their children, that they made several death threats against FINCH.

25. At which point resident Joan Thompson, another minority resident, reported that when she went to the clubhouse to complain about her son being periodically denied ingress into the community. FINCH pulled her into his office out of view of the surveillance camera and assaulted her. She was able to break away nevertheless, FINCH pursued her and ran her over with a golf cart which resulted in injuries so severely, she had to miss time from work. At this juncture JOSEPH PETRICK **called her a "liar".** Thompson responded by bursting into tears and pulling up the screenshots of the payments she had received from BRUCE KING owner of KING'S MANAGEMENT to compensate her for her medical expenses as well as time missed from work and showing them to TIFFANY PETER who was sitting right next to her. KING then motioned PETRICK and whispered to him apparently confirming that what Thompson was saying was in fact true. PETRICK then acknowledged the authenticity of Thompson's claim to the other residents in attendance.

26. On September 29th of 2022, the DEFENDANTS filed a lawsuit against the PLAINTIFFS, essentially arguing that SHERROD was an irrationally violent nuisance and should be banned from the community. SHERROD and PETER were served twenty-four hours **after the**

DEFENDANTS petition for EMERGENCY RELIEF went into effect, ultimately placing SHERROD at risk of being held in contempt of an Order that he was not aware of. SHERROD was effectively forced to leave his home in the middle of the night or face arrest. MOREOVER, the process server stated that he was ordered not to serve SHERROD and PETER until that specific time. PLAINTIFFS would like to make this Court aware that SHERROD was removed from his home and minor child J.Z.S. for more than 11 days.

28. At the HEARING on October 25th, 2022, Judge Delgado decided that because of the severity of the consequences for SHERROD and PETER as well as minor child J.Z.S. that he would hear the matter immediately. Judge Delgado then asked SHERROD and PETER if they were prepared to proceed? They replied yes, they were prepared. Judge Delgado then turned to KBR attorney Sean Brown representing the DEFENDANTS and asked if he was prepared to proceed. Attorney Brown replied that his witness was not there yet, that he had spoken to him earlier that morning and that the witness had assured him that he was enroute to the proceedings. At which point Judge Delgado remarked that he was already 15 minutes late. The PLAINTIFFS would like this Court to take Judicial notice that the only logical witness was FINCH, whose attorney **had already informed** Det. O'DEA according to his PCA that he **did not** wish to give a statement. Attorney Brown requested a brief continuance to contact his witness regarding their proximity to the court. Judge Delgado granted attorney BROWN his request. BROWN, having taken roughly 45 minutes, then returned and informed the Court that his witness had gotten the date for the proceedings incorrect. The PLAINTIFFS would like this Court to take Judicial notice that attorney BROWN completely changed his claim from that his witness was just a few moments away, **to claiming that the witness had gotten the Hearing date incorrect**. As a result, Judge

Delgado dismissed their Emergency Relief with prejudice, with leave to brief the second count of their suit on October 25th, 2022.

29. Judge Delgado's Order didn't become official until December 13th, 2022. The DEFENDANTS appealed in this matter (Case Number 22-CA-9640) to the Fourth District Court of Appeals case number: 4D2023-0170 on January 18th, 2023. On January 20th, 2023, there was an order from that Court to obtain a final order. On March 1, 2023, the Court ordered the Appellant to show cause in writing, if any there be, within ten (10) days from the date of this order, why the above-styled case should not be dismissed… for failure to comply with this Courts January 20th, 2023 order. On March 10th, 2023, the same day which Attorney Shawn Brown of KBR requested an extension from the PLAINTIFFS which they quite naturally denied, the DEFENDANTS filed a **Motion of Voluntary Dismissal.** The Fourth DCA responded with an Order Granting Voluntary Dismissal on March 10th, 2023.

30. However, despite the foregoing, the DEFENDANTS continued in their attempts to weaponize the Civil Justice System against the PLAINTIFFS by filing suit yet again, which including the first foreclosure action made a total of three suits, clearly a blatant attempt to intimidate the Plaintiff's since they knew that the previous actions had bankrupted them. This time, after **voluntarily dismissing the second suit**. This third suit with the assistance of the DEFENDANT'S new Attorney was settled on October 15, 2024, ending three years of litigation initiated by the Defendants against the PLAINTIFFS.

31. In summary as early as June of 2021, the DEFENDANTS conspired to target the PLAINTIFFS in an organized scheme to defraud the PLAINTIFFS of the residence at 3117 Bollard Road by foreclosing and putting the residence up for auction at which it was sold, **all without notifying the PLAINTIFFS.** When that gambit failed, they began harassing

SHERROD by periodically denying him ingress to the gated community. Moreover, when the Bankruptcy Court decided that PETER could retain her home, FINCH apparently frustrated, escalated the conspiracy by trying to murder SHERROD. After he survived FINCH'S alleged murder attempt, with the assistance of WPB Det. O'DEA who committed multiple Brady violations against SHERROD, the DEFENDANTS sought to cover up their crime by weaponizing both the Criminal and Civil Justice systems against the PLAINTIFFS by charging and eventually convicting SHERROD of Misdemeanor Battery against the alleged victim FINCH. For which SHERROD served five months in Palm Beach County Jail. However, that conviction has, as of October 2, 2024, been reversed by the Fourth District Court of Appeals of Florida. Incredibly the DEFENDANTS, as mentioned above, were simultaneously suing the PLAINTIFFS for the third time, after **voluntarily dismissing the second suit** . This second suit with the assistance of the DEFENDANT'S new Attorney was settled on October 15, 2024. While the Battery Case against Sherrod was nolle prossed on January 21, 2025.

## VII RELIEF

As a result of the DEFENDANTS' actions for the last three years, the PLAINTIFFS have suffered **considerable** financial hardship, physical pain, loss of consortium, mental as well as extreme emotional anguish.

Most importantly PLAINTIFF'S minor child was born in June of 2020. He was especially close to his father because of Pandemic protocols, since he had seen and interacted with him every day of his life. In fact, even for the two days a week he stayed with his grandparents he had daily facetime calls. Right up until his father's sudden disappearance due to first being shot by FINCH, which lasted 3 days and another 10 days due to the blood in his lung and subsequent COVID

infection a total of 13 days. Therefore, he was severely traumatized by his father's sudden disappearance for 5 months because of his incarceration due to the machinations of the DEFANDANTS. To the point where he couldn't enjoy his cousin's birthday party for long, opting to sit in a corner alone for most of the party. He also began walking up to complete strangers and asking them: "Have you seen my Daddy??"

Furthermore, SHERROD shares custody of his minor children, AJS age 15 and JZS age 7, mainly in the summertime while alternating holidays. Therefore, they were both deprived of full access ie swimming lessons etc. to their loving father for two consecutive summers. The first because he was recovering from the gunshot wound, he received from FINCH, the second during which he was incarcerated and on house arrest. Neither JZS or JMS at that time being 3 and 6 respectively were fully apprised of the dire situation. While the eldest was clearly traumatized when she was informed of the true nature of her father's incapacitation repeatedly exclaiming; "you could have died" numerous times.

Additionally, SHERROD has experienced anxiety related to PTSD, leading to the loss of his high-pressure sales job and physical symptoms like trembling, cold sweats, and going up to three days without sleep. Moreover, due to the loss of employment SHERROD also lost his health insurance and has not been able to get consistent treatment for his health issues. This is why the trembling and cold sweats played such a detrimental role to his case in his Family Court proceedings when his wife's attorney used his Shooting and subsequent incarceration to paint him as being not credible.

In addition, SHERROD SR suffered intense emotional distress from SHERROD being nearly murdered and subsequently incarcerated. During which time he spent hours on the phone with PBC Jail medical personnel attempting to get proper medical care for SHERROD who is a

bariatric patient whose blood pressure went from 120 over 80 to as high as 250 over 200 and gained 60 lbs. SHERROD SR also suffered financially since he has been supporting SHERROD financially ever since he lost his job after collapsing on a call with a customer during which his supervisor happened to be listening. He also suffered additional emotional distress being periodically called by his minor grandchildren when SHERROD's PTSD resulted in an outburst of irritational behavior. This necessitated SHERROD SR a 70-year-old who has been living with Lupus an autoimmune stress related disease that has been in remission since 1992 rushing from Port St. Lucie to the residence at 3117 Bollard RD several times in the middle of the night to help calm SHERROD down. This may have contributed to SHERROD SR being hospitalized for Congestive Heart Failure.

It is clear that the Defendants have intentionally engaged in cruel actions against the PLAINTIFFS by weaponizing both the Florida State Criminal and Civil systems against the Plaintiffs who are therefore entitled to compensatory damages in the amount of 25 million Dollars as well as punitive damages commiserate with the viciousness of acts of the DEFENDANTS!

## VIII. RIGHT TO AMEND

Plaintiff respectfully requests and reserves the right to amend his Complaint as necessary upon completing initial discovery.

Respectfully submitted this 11<sup>th day</sup> of February 2025.

By: _____
Curtis L. Sherrod II
Plaintiff In proper Person
3117 Bollard Rd

West Palm Beach, FL 33411
(561)504-0056
Curtis.Sherrod@gmail.com

By: _____
Curtis L. Sherrod Sr.
Plaintiff In Proper Person
2016 SW Pruitt ST
Port Saint Lucie, FL 34953
(561)350-5956
Csherrod901@gmail.com

0